# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TEAMWORKS INNOVATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV1240 |
| | ) | |
| STARBUCKS CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motion for Expedited Discovery Responses and Request for Hearing on Motion for Preliminary Injunction (Docket Entry 26). (See Docket Entry dated Jan. 9, 2020 (referring instant Motion to undersigned United States Magistrate Judge); see also Docket Entry 13 (Motion for Preliminary Injunction ("PI Motion")).) After receiving Defendants' Opposition (Docket Entry 30) and conducting a hearing (see Minute Entry dated Jan. 15, 2020), the Court orally announced that it would grant in part and would deny in part the instant Motion, in that the Court would order Defendants to provide some discovery responses before the conference mandated by Federal Rule of Civil Procedure 26(f), but that the Court neither would require Defendants to respond on an expedited basis to all of the requests for production ("RFPs") and interrogatories Plaintiff served on Defendants prior to the removal of this case from state court, nor would set a date for a hearing on the PI Motion at this time.

Having given the parties those broad outlines for the disposition of the instant Motion, the Court directed the parties to confer in an attempt to reach a mutual resolution regarding the specific scope of the expedited discovery that would occur and set a deadline for them to report the results of their conference. (See id.)  The parties complied, as reflected in their filings outlining areas of consensus, as well as of continuing disagreement.  (See Docket Entries 32, 33, 35.)  The Court now enters this Order formally disposing of the instant Motion.

INTRODUCTION

Plaintiff instituted this trademark-related action (concerning its TEAMWORKS scheduling platform) by filing a Complaint against Defendants in North Carolina state court on November 22, 2019. (See Docket Entry 7.)  On November 25, 2019, Plaintiff (pursuant to North Carolina state law) served Defendants with discovery requests. (See Docket Entries 27-3, 27-4, 27-5, 27-6, 27-7, 27-8.) Plaintiff thereafter moved for a preliminary injunction (in North Carolina state court) on December 18, 2019.  (See Docket Entry 1-8.)  The next day, Defendants removed this action to this Court (see Docket Entry 1) and sought an extension of time to file a responsive pleading, as well as to respond to the preliminary injunction request (see Docket Entry 6).  The Court (per the Clerk) promptly extended Defendants' deadline to answer or to otherwise respond to the Complaint to January 27, 2020, and advised that,

2

"[s]hould Plaintiff desire to pursue a [m]otion for [p]reliminary [i]njunction in this Court, a new motion should be filed . . . ." (Text Order dated Dec. 20, 2019.) Plaintiff filed the PI Motion the next business day. (See Docket Entry 13; see also Docket Entry 14 (Memorandum of Law in Support).) Defendants immediately moved for an extension of their deadline to respond to the PI Motion to January 27, 2020 (see Docket Entry 15), which the Court (per Chief Judge Thomas D. Schroeder) granted (see Docket Entry 19).

On January 6, 2020, Plaintiff filed the instant Motion. (See Docket Entry 26; see also Docket Entry 27 (Memorandum of Law in Support).) Upon referral (see Docket Entry dated Jan. 9, 2020), the undersigned Magistrate Judge "shorten[ed] the response time as to and set[] a hearing on [the instant] Motion" (Text Order dated Jan. 9, 2020). Defendants responded in opposition (see Docket Entry 30) and (as described above) a hearing followed (see Minute Entry dated Jan. 15, 2020), after which the parties made further filings as to their (only partially successful) efforts to agree to parameters for expedited discovery (see Docket Entries 32, 33, 35).

## DISCUSSION

The instant Motion asks "that the Court order Defendants to respond as soon as possible, but no later than close of business, January 30, 2020, to [Plaintiff's] pending modest and targeted written discovery requests." (Docket Entry 26 at 1 (emphasis added); see also Docket Entry 27 at 2 ("The requested response date

3

. . . is 66 days after email courtesy copies of the discovery were provided to opposing counsel and past what otherwise would be the ordinary due date in state court."), 3 n.3 (suggesting, based on construction of 28 U.S.C. § 1450 in Mann v. Metropolitan Life Ins. Co., No. 99CV36, 1999 WL 33453411, at *2 (W.D. Va. July 9, 1999) (unpublished), that discovery served prior to removal remains in force after removal).)  In assessing the instant Motion, the Court first declines to treat the discovery Plaintiff served 24 days before removal as "pending" (Docket Entry 26 at 2).

"[O]nce a case is removed to federal court, the Federal Rules of Civil Procedure apply.  Pursuant to Federal Rule of Civil Procedure 26, 'a party [generally] may not seek discovery from any source before the parties have conferred as required by Rule 26(f).'" McKnight v. Pickens Police Dep't, C/A No. 8:18-3277, 2019 WL 4593578, at *2 (D.S.C. Sept. 23, 2019) (unpublished) (internal brackets and ellipsis omitted) (quoting Fed. R. Civ. P. 26(d)(1)); see also id. ("[T]he vast majority of courts have held that discovery requests are not injunctions, orders, or proceedings of a state court under 28 U.S.C. § 1450 . . . ." (internal quotation marks omitted)).  As a result, "the [C]ourt agrees with the majority of the courts which have addressed this issue and finds that [discovery] requests . . . served while [an] action was pending in state court[] need not be answered if the action is removed to federal court prior to the time responses are due." Id.

Notwithstanding that conclusion (and Federal Rule of Civil Procedure 26(d)(1)'s default position precluding discovery prior to the parties' meeting under Federal Rule of Civil Procedure 26(f)), "[d]iscovery can begin earlier if authorized . . . by [court] order . . . .  This will be appropriate in some cases, such as those involving <u>requests for a preliminary injunction</u> . . . ."  Fed. R. Civ. P. 26, advisory committee notes, 1993 amend., subdiv. (d) (emphasis added); <u>see also</u> <u>Ciena Corp. v. Jarrad</u>, 203 F.3d 312, 320 (4th Cir. 2000) ("We are remanding this case to the district court with instructions to allow [the defendant] such expedited discovery on the injunction application as she may justify to the [district] court . . . .").  Indeed, as attorneys from the Washington, D.C. law firm representing Defendants recently (successfully) argued to another federal court on behalf of different clients, "'[e]xpedited discovery is <u>particularly appropriate</u> when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings.'"  Memorandum of Law in Support of Mot. for Expedited Discovery at 8, <u>Garnett v. Zeilinger</u>, No. 1:17CV1757, 2017 WL 8944640 (D.D.C. Dec. 15, 2017), Docket Entry 33-2 (emphasis added) (quoting <u>Ellsworth Assocs. v. United States</u>, 917 F. Supp. 841, 844 (D.D.C. 1996)); <u>see also</u> <u>Semitool, Inc. v. Tokyo Electron Am., Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("[G]ood cause [for expedited discovery] is frequently found in cases involving claims of infringement and unfair competition.").

Nonetheless, Defendants have described expedited discovery in this case as something "to which [Plaintiff] has no right and for which it has no need." (Docket Entry 30 at 5.) To establish a right to expedited discovery, "some showing of good cause should be made . . . and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard." 8A Charles Alan Wright, et al., Federal Practice and Procedure § 2046.1 (3d ed. & Aug. 2019 Update) (emphasis added). "Some courts have also treated the question in terms similar to the criteria for a preliminary injunction," id., but "[t]he approach . . . [of] borrowing portions of the preliminary injunction standard[] has been criticized by other courts," Dimension Data N. Am., Inc. v. Netstar-1, Inc., 226 F.R.D. 528, 531 (E.D.N.C. 2005) (citing cases); see also Wright, et al., supra, § 2046.1 (questioning use of preliminary injunction criteria in assessing motions for expedited discovery related to preliminary injunction litigation, because "obvious[ly] th[e] permission to commence discovery is a much less aggressive order than a preliminary injunction").

After careful review, the Court adopts the majority position that, "where [a litigant] requests expedited discovery in preparation for a preliminary injunction determination, . . . [analyzing preliminary injunction] factors is not appropriate. Rather, a standard based upon reasonableness or good cause, taking

6

into account the totality of the circumstances, is more in keeping with discretion bestowed upon the [C]ourt in the Federal Rules of Civil Procedure." Dimension Data, 226 F.R.D. at 531; accord, e.g., Garnett, 2017 WL 8944640, at *1 & n.1; Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC, No. 5:15CV115, 2015 WL 12600175, at *3 (E.D.N.C. June 29, 2015) (unpublished); L'Occitane, Inc. v. Trans Source Logistics, Inc., No. 09CV2499, 2009 WL 3746690, at *2 (D. Md. Nov. 2, 2009) (unpublished); contra, e.g., ForceX, Inc. v. Technology Fusion, LLC, No. 4:11CV88, 2011 WL 2560110, at *5 (E.D. Va. June 27, 2011) (unpublished).

As to application of the foregoing good cause/reasonableness standard here, the parties have agreed that the Court should consider (1) the "timing of the [instant M]otion" (Docket Entry 27 at 5; Docket Entry 30 at 6), (2) "whether [Plaintiff] has narrowly tailored its [discovery] requests to gather information relevant to a preliminary injunction determination" (Docket Entry 27 at 5; Docket Entry 30 at 6), and (3) "whether [Plaintiff] has shown a likelihood of irreparable harm without access to expedited discovery" (Docket Entry 27 at 5; Docket Entry 30 at 6). On balance, these factors warrant expedited discovery (although not to the full extent or on the exact schedule Plaintiff has proposed).

Regarding the timing factor, as documented in the Introduction, Plaintiff filed the instant Motion seven business days after filing the PI Motion and three weeks before Defendants'

(extended) deadline to respond to the PI Motion, consistent with Plaintiff's stated goal of obtaining discovery responses in time to "allow [Plaintiff] to incorporate appropriate information into its [planned PI Motion] reply that will be helpful to the Court as it works to render a just and fair decision [on the PI Motion]" (Docket Entry 27 at 7-8). Under the Court's Local Rules, the PI Motion "will be considered and determined on the official court file including affidavits, briefs and other documents filed in support thereof without oral argument or testimony unless otherwise ordered by the Court." M.D.N.C. LR 65.1(b). Because Plaintiff does not yet know whether or when the Court will hold a hearing on the PI Motion, Plaintiff has reasonably timed the instant Motion to attempt to gather authentic documents (via RFPs) and verified information (via interrogatories) which it could endeavor to include in "the official court file," id., in advance of any ruling on the PI Motion, by incorporating such materials into affidavits or attaching them to Plaintiff's PI Motion reply brief. The timing factor thus favors allowing expedited discovery in this case.[1]

---

1 Defendants have argued that Plaintiff prejudicially timed the instant Motion to make Defendants: (A) prematurely reveal their grounds for opposing the PI Motion (because, as discussed above, some courts have imported the preliminary injunction analysis into the standard for expedited discovery) (see Docket Entry 30 at 11; see also id. at 12 ("Given the legal standards governing [the instant M]otion . . . , [Plaintiff's] tactics . . . attempt to force Defendants to present a mini-preliminary injunction opposition . . . before their actual opposition deadline." (emphasis omitted))); and (B) "divert further resources
(continued...)

Conversely, the next good cause/reasonableness factor the parties identified, i.e., narrow tailoring, weighs against allowing

---

1(...continued)
away from their defense" (id. at 11-12; see also id. at 12 ("[The instant M]otion is a clear attempt to harass Defendants with extra motion practice while [they] work diligently to respond to Plaintiff's Complaint and [the PI] Motion . . . .").  If credited, "[these] argument[s would] place[ Plaintiff] in a 'damned if you do, damned if you don't' position that flies in the face of any remotely reasonable interpretation of [good cause]," Greenwood v. Koven, 880 F. Supp. 186, 197 (S.D.N.Y. 1995).  Specifically, Defendants want the Court to fault Plaintiff for filing the instant Motion before they responded to the PI Motion; however, if Plaintiff had waited to file the instant Motion until after Defendants responded to the PI Motion, they surely would have insisted that the Court fault Plaintiff for such delay (see Docket Entry 30 at 13 ("If the discovery Plaintiff is seeking was absolutely necessary and the alleged harm it would suffer without it was truly irreparable, Plaintiff could have . . . sought discovery much earlier.")).  Nor does the Court draw any negative inferences against Plaintiff due to its purported "total failure to communicate with Defendants for more than five months between receiving Defendants' responses to Plaintiff's demand letters and filing its preliminary injunction motion."  (Id. at 12-13.)  As an initial matter, the time-line set forth in Defendants' Opposition establishes the inaccuracy of their foregoing allegations about both the length of time without communication and the timing of further communication in relation to the filing of the preliminary injunction motion in state court.  (See id. at 2-3 ("[Defendants] provided substantive responses to [Plaintiff's] demand letters on July 12, 2019, and July 16, 2019 . . . .  [They] heard [no]thing further from Plaintiff for over four months until November 22, 2019 . . . .  On December 18, 2019, . . . Plaintiff filed a [m]otion for [p]reliminary [i]njunction in the [s]tate [c]ourt [a]ction.  Plaintiff chose to file th[at] motion despite ongoing settlement discussions between counsel for the parties . . . .").)  Further, given that (as Defendants acknowledge) their July 2019 letters rejected all of Plaintiff's demands (including for voluntary disclosure of information) (see id. at 2), Plaintiff acted reasonably by spending four months gathering evidence and drafting the Complaint, before re-engaging with Defendants.  See generally Sutton v. Subaru of Am., Inc., Civ. No. 88-1402, 1993 WL 247960, at *6 (D. Kan. June 15, 1993) (unpublished) (describing "time to negotiate" as point at which "[b]oth [sides] deal from a position of strength" and "each ha[s] something to offer the other").

9

the full measure of expedited discovery proposed by Plaintiff. To begin, as the Introduction notes, the instant Motion seeks expedited responses to all the interrogatories and RFPs Plaintiff served before removal (and before Plaintiff's request for a preliminary injunction in state court). That sequence of events undermines the instant Motion's contentions that Plaintiff "was intentional about drafting targeted discovery to support the [PI M]otion and [that] all the sought discovery is appropriate." (Docket Entry 26 at 1 n.1.) In any event, the instant Motion and supporting memorandum effectively abandon the quest for expedited responses to every previously-served discovery request by failing to develop any argument justifying such broad relief (see id. at 1-3; Docket Entry 27 at 1-8) and instead "emphasiz[ing] that the responses to Interrgatories 2 through 5 for all Defendants, [as well as to RFPs] 1 and 4 through 12 for all Defendants . . . are especially important for purposes of an injunction proceeding" (Docket Entry 26 at 1-2 n.1; Docket Entry 27 at 2 n.1). See Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A party should not expect a court to do the work that it elected not to do.").

Moreover, as discussed on the record at the hearing on January 15, 2020, some aspects of the discovery specifically discussed in the instant Motion and supporting memorandum (i.e., Interrogatories 2 through 5 and RFPs 1 and 4 through 12) also "sweep[] beyond the

10

narrow issues the Court may need to resolve at th[e preliminary injunction] juncture," Garnett, 2017 WL 8944640, at *2. Accordingly, "[b]ecause [Plaintiff's] proposed discovery is, [to a significant extent], overbroad, this factor does not counsel in favor of granting [the instant M]otion." Chryso, 2015 WL 12600175, at *5. That conclusion does not end the inquiry, "[h]owever, [as] the Court is not obligated to grant or deny Plaintiff's request [for expedited discovery] wholesale." Garnett, 2017 WL 8944640, at *2. Rather, the Court proceeds to consider the final good cause/reasonableness factor on which the parties have focused, i.e., harm to Plaintiff without expedited discovery, with the understanding that "[a]ny discovery allowed prior to the Rule 26(f) conference will need to be limited to address matters pertinent to the [resolution of the PI Motion]," Chryso, 2015 WL 12600175, at *5.

In connection with that final factor, Plaintiff has argued that, if "required to wait until after the initial discovery conference to conduct discovery, it will be prejudiced because it will be unable to gather further evidence in support of its [PI Motion for inclusion in its PI Motion reply]." (Docket Entry 27 at 7; see also Docket Entry 26 at 2 ("[T]here is good cause to require discovery responses in advance of the preliminary injunction hearing to further support [Plaintiff's] claims.").) To support that argument, Plaintiff highlighted three categories of "further evidence" (Docket Entry 27 at 7) sought via "Interrogatories 2

11

through 5 for all Defendants, [as well as RFPs] 1 and 4 through 12 for all Defendants" (Docket Entry 26 at 1-2 n.1; Docket Entry 27 at 2 n.1): "[1] whether [] Defendants did proper diligence[, [2] Defendants'] internal evidence of the actual confusion [between Plaintiff's trademarked platform and Defendants' like-named platform], and [3] the contractual responsibilities among Defendants" (Docket Entry 26 at 2 n.1; Docket Entry 27 at 2 n.1).[2]

As to the first two such categories, Plaintiff more particularly has asserted that it needs an opportunity, in advance of the resolution of the PI Motion, to gather (and to make part of the record) evidence of "Defendants' knowledge of [Plaintiff's] platform and Defendants [sic] knowledge of the actual marketplace

---

2 Neither the instant Motion nor its supporting memorandum elucidate how discovery concerning Plaintiff's third category of sought-after "further evidence" (Docket Entry 27 at 7), i.e., "the contractual responsibilities among Defendants" (Docket Entry 26 at 2 n.1; Docket Entry 27 at 2 n.1), would impact the resolution of the PI Motion. (See Docket Entry 26 at 1-3; Docket Entry 27 at 1-8.) When questioned about that matter at the hearing on January 15, 2020, counsel for Plaintiff likewise did not provide a clear answer. Regardless, in Defendants' post-hearing filing, "[i]n response to [Plaintiff's discovery] request[s] directed at the relationship and division of responsibilities between . . . Defendants (Interrogatory 5 [and RFPs] 8, 9, 10, 11), Defendants have offered to produce the executed versions of the final operative contracts between [Defendants] related to the development and implementation of the work force management platform and associate apps identified by the name STARBUCKS TEAMWORKS." (Docket Entry 33 at 3; see also id. ("Defendants have declined to undertake electronic discovery to identify any and all other documents that might be responsive to [Interrogatory 5 and RFPs 8 through 11] as unreasonable and unnecessary under the circumstances.").) Based on this record, the Court will not order expedited responses to Interrogatory 5 or RFPs 8 through 11, beyond the production (described herein) to which Defendants have agreed.

12

confusion" (Docket Entry 27 at 5-6), because "[s]uch evidence will further demonstrate Defendants' willfulness" (id. at 6). Consistent with that assertion, Plaintiff's memorandum supporting its PI Motion argues (with citation to authority) that:

1) to secure a preliminary injunction, Plaintiff "'must show that . . . it is likely to succeed on the merits [of a claim]'" (Docket Entry 14 at 15 (quoting Fleet Feet, Inc. v. Nike Inc., F. Supp. 3d   ,   , 2019 WL 6468114, at *1 (M.D.N.C. 2019)));[3]

2) to succeed on the merits of its federal trademark claim(s), Plaintiff "must demonstrate . . . 'that [a D]efendant's use of [Plaintiff's] mark is likely to confuse consumers'" (id. at 16 (quoting Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012)); see also id. at 29 (arguing that Plaintiff's state law claims also incorporate confusion element));

3) "the non-exhaustive list that guides courts in determining whether confusion between marks is likely . . . [includes] '"[D]efendant[s'] intent"'" (id. at 18 (emphasis omitted) (block quotation of and within Rosetta Stone, 676 F.3d at 153 (quoting George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009)), converted to quotation marks)); and

---

3 Page citations to the above-cited memorandum refer to the page numbers that appear in the footer appended to that memorandum upon its filing via the CM/ECF system (not that memorandum's original pagination, which begins with roman numerals before switching to arabic numerals).

4) Defendants' "failure to conduct diligence, and to respond to [Plaintiff's] requests to remedy the issue, suggest bad intent" (id. at 26 (emphasis omitted)), because "'continued infringement after notice . . . is probative evidence of willfulness'" (id. at 26-27 (quoting Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007))), as exemplified, inter alia, by the fact that, "given the volume of inquiries [Plaintiff] has received from confused [] employees[ of Defendant Starbucks Corporation, said Defendant] has almost certainly received numerous inquiries of its own yet carries on undeterred" (id. at 27).

Defendants' Opposition to the instant Motion agrees that, to prevail on the PI Motion, (1) Plaintiff must "show[] that it is likely to succeed on the merits of its claims" (Docket Entry 30 at 14), (2) to succeed on the merits of its "trademark infringement and unfair competition [claims, Plaintiff] must prove . . . [a D]efendant used the mark in a manner likely to confuse consumers" (id. at 15 (internal block quoting omitted)), and (3) that, in assessing the adequacy of such proof, the Court must engage in "a detailed factual analysis of the likelihood of confusion factors" set out in George & Co., 575 F.3d at 393, which include a "defendant's intent," id. (Docket Entry 30 at 16). As to the fourth proposition (outlined above) from Plaintiff's memorandum supporting the PI Motion (articulating how certain evidence could inform the Court's view of a defendant's intent), Defendants'

14

Opposition to the instant Motion "decline[s] to undertake [any] detailed analysis" (id. at 17).

In other words, Defendants (at least to this point) have not contested the contention that evidence of (A) their diligence in avoiding trademark infringement (or lack thereof), as well as (B) their continued use of the Teamworks name for their platform despite notice of Plaintiff's trademarked platform and of confusion between the two platforms (by Defendant Starbucks Corporation's own employees), directly factors into the analysis of the PI Motion that the Court must undertake. Accordingly, "[t]he relevance of the requested discovery [into those topics] is not at issue here." Semitool, 208 F.R.D. at 276. That consideration "weighs in favor of granting the [instant M]otion[ because (1) it establishes that] Plaintiff[] seek[s] discovery related to factual issues raised by [its] pending [PI M]otion," Garnett, 2017 WL 8944640, at *2, and (2) discovery on those relevant factual issues "will better enable the [C]ourt to judge the parties' interests and respective chances for success on the merits," id. (internal quotation marks omitted). In sum, "at least some of the discovery that Plaintiff[] seek[s] will bear on the merits of the[ PI M]otion and will facilitate the Court's resolution of th[e PI M]otion." Id.

Furthermore, although (in the instant Motion and supporting memorandum) Plaintiff focused on the willfulness/intent implications of discovery concerning Defendants' knowledge of

15

confusion between Plaintiff's trademarked platform and Defendants' like-named platform (e.g., communications from/among employees of Defendant Starbucks Corporation evincing such confusion), arguments offered by Defendants in their Opposition to the instant Motion support the view (advanced by Plaintiff at the hearing on January 15, 2020) that it needs expedited discovery of such evidence to properly address the even more critical question of whether actual confusion of the two platforms has occurred. In that regard, the Fourth Circuit has held that "evidence of actual confusion is often paramount in the likelihood of confusion analysis." George & Co., 575 F.3d at 393 (internal quotation marks omiited). In recognition of that principle, the PI Motion declares that, in this case, "[t]here is undeniable evidence of a likelihood of confusion, in the form of profound actual confusion in the marketplace." (Docket Entry 13 at 4 (emphasis omitted).)

As the factual foundation for that declaration, the PI Motion asserts that "[a]t least 201 [of Defendant] Starbucks [Corporation's] employees have contacted [Plaintiff] for technical support with [Plaintiff's] TEAMWORKS platform, when they are in fact attempting to use [Defendants'] 'Teamworks' platform. [Defendant] Starbucks [Corporation's] employees have also been caustic in their online criticism of [Plaintiff], when they are in fact dissatisfied with [Defendants'] platform . . . ." (Id.) Plaintiff's memorandum supporting the PI Motion elaborates on those

16

assertions, with citations to an attached affidavit from one of Plaintiff's officers detailing the referenced contacts and criticisms. (See Docket Entry 14 at 19-20 (citing Docket Entry 14-1, ¶¶ 23, 25-27, 29-32).) Additionally, prior to the hearing on January 15, 2020, Plaintiff submitted a Declaration from one of its attorneys attaching copies of recent complaints Plaintiff received from Defendant Starbucks Corporation's "employees demonstrating the actual confusion between [Plaintiff's] TEAMWORKS and Defendant[s'] 'Teamworks'" (Docket Entry 29, ¶ 3), as well as screenshots of negative online reviews of Plaintiff's platform and social media profiles that appear to identify the complainants/reviewers as employees of Defendant Starbucks Corporation (see id., ¶¶ 4-6).

Defendants' Opposition to the instant Motion, in turn, makes several statements that suggest (albeit cryptically) that they may challenge the (above-described) evidence marshaled by Plaintiff. (See Docket Entry 30 at 12 n.6 (seemingly disputing sufficiency of evidence connecting Defendant Starbucks Corporation to complainants/reviewers cited by Plaintiff), 17 ("Defendants differ with Plaintiff on the proper characterization and significance of the alleged 'actual confusion' evidence presented in Plaintiff's [PI Motion] briefing . . . ."), 18 ("Plaintiff will be unable to demonstrate . . . that the type of confusion that qualifies as

17

'trademark' confusion exists . . . .").)[4] Because Defendants may deny that employees of Defendant Starbucks Corporation have confused Defendants' platform with Plaintiff's platform and proof of such confusion could impact the Court's ruling on the PI Motion, Plaintiff would suffer significant harm if denied expedited discovery on that front. Put another way:

> Although Plaintiff[] believe[s it already] ha[s] submitted substantial evidence demonstrating [its] likelihood of success on the merits of [its] claims, permitting [it] to obtain th[is] limited discovery . . . will allow the Court to more fully appreciate [whether] Defendant[s] fail[ed] to [] comply with [their] obligations under [federal trademark law]. . . . [T]hese expedited discovery requests will thus facilitate the efficient resolution of Plaintiff['s] pending [PI M]otion . . . .

Memorandum of Law at 9, Garnett, 2017 WL 8944640.

CONCLUSION

In light of the foregoing review of the three good cause/ reasonableness factors singled out by the parties, "the Court will grant Plaintiff[] some of the expedited discovery that [it] seek[s]," Garnett, 2017 WL 8944640, at *1. However, as forecast in the discussion of the "narrow tailoring" factor, the Court has scrutinized Plaintiff's previously-served interrogatories and RFPs to limit discovery at this stage solely to matters (detailed above)

---

[4] Notably, despite ample opportunity, counsel for Defendants gave no indication at the hearing on January 15, 2020, that (for purposes of the Court's resolution of the PI Motion) Defendants would stipulate that any significant number of employees of Defendant Starbucks Corporation contacted Plaintiff for technical support and/or negatively reviewed Plaintiff's platform.

18

that Plaintiff should receive an opportunity to explore in advance of the Court's ruling on the PI Motion. In so doing, the Court has carefully considered the parties' post-hearing filings (including as to areas of agreement[5]) and the principles of proper discovery mandated by Federal Rule of Civil Procedure 26.

**IT IS THEREFORE ORDERED** that the instant Motion (Docket Entry 26) is **GRANTED IN PART and DENIED IN PART**, in that a decision on whether/when to hold a hearing on the PI Motion (Docket Entry 13) shall occur at a later date, but, on or before February 14, 2020, Defendants:

1) shall answer Interrogatories 2 and 4 (Docket Entry 27-3 at 6-7; Docket Entry 27-5 at 6-7; Docket Entry 27-7 at 6-7);[6]

2) shall produce non-privileged documents (created before Defendants received the June 2019 letter(s) from Plaintiff regarding its trademarked platform) responsive to RFPs 4 and 5 (Docket Entry 27-4 at 7; Docket Entry 27-6 at 7; Docket Entry 27-8

---

5 Defendants' post-hearing filing references their request (first raised at the hearing on January 15, 2020) for "limited expedited reciprocal discovery" and outlines three interrogatories and an RFP. (Docket Entry 33 at 6.) Plaintiff has agreed to "provide the information under oath to [answer the three interrogatories], and . . . documents sufficient to address the [RFP], subject to a protective order." (Docket Entry 35 at 3.) Given this agreement and the absence of any formal motion on point, the Court will not enter any order respecting such discovery.

6 Page citations to the above-cited documents (and to the related RFPs (see Docket Entries 27-4, 27-6, 27-8)) refer to the page numbers that appear in the footer appended to such documents upon filing via the CM/ECF system (not their original pagination, which begins after a cover page that now accompanies each of them).

19

at 7), and a log of any responsive documents withheld based on a claim of privilege;

3) in lieu of answering Interrogatory 3 (Docket Entry 27-3 at 6; Docket Entry 27-5 at 7; Docket Entry 27-7 at 7) and in satisfaction of RFPs 6 and 7 (Docket Entry 27-4 at 8; Docket Entry 27-6 at 8; Docket Entry 27-8 at 8), shall produce the trademark search report for the TEAMWORKS mark prepared by Corsearch;

4) in lieu of answering Interrogatory 5 (Docket Entry 27-3 at 7; Docket Entry 27-5 at 7; Docket Entry 27-7 at 7) and in satisfaction of RFPs 8 through 11 (Docket Entry 27-4 at 8-9; Docket Entry 27-6 at 8-9; Docket Entry 27-8 at 8-9), shall produce the executed, final operative contracts between Defendants regarding the development and implementation of the platform identified by the name STARBUCKS TEAMWORKS; and

5) in satisfaction of RFP 12 (Docket Entry 27-4 at 10; Docket Entry 27-6 at 10; Docket Entry 27-8 at 10), shall produce non-privileged documents from Defendant Starbucks Corporation's Technology Help Desk and Partner Contact Center that reference Plaintiff's platform, including inquiries from Defendant Starbucks Corporation's employees and follow-up communications (whether addressed to the inquiring employee(s) or others), and a log for any such documents withheld based on a claim of privilege.

                                        /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                        **United States Magistrate Judge**

January 24, 2020